IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERIE DIVISION

| | |
|---|---|
| CHARLES TALBERT, <br><br> Plaintiff <br><br> v. <br><br> DEPARTMENT OF CORRECTIONS, et al, <br><br> Defendants | ) <br> ) 1:24-CV-00166-RAL <br> ) <br> ) RICHARD A. LANZILLO <br> ) Chief United States Magistrate Judge <br> ) <br> ) MEMORANDUM OPINION ON <br> ) PLAINTIFF'S MOTION FOR <br> ) JUDGMENT ON THE PLEADINGS <br> ) [77], DEFENDANTS' MOTION FOR <br> ) JUDGMENT ON THE PLEADINGS <br> ) [83], PLAINTIFF'S MOTION FOR <br> ) SUMMARY JUDGMENT [91], and <br> ) DEFENDANTS' MOTION FOR <br> ) SUMMARY JUDGMENT [103] <br> ) <br> ) |

I.    Introduction

Plaintiff Charles Talbert, an inmate formerly in the custody of the Pennsylvania Department of Corrections (DOC),[1] initiated this action by filing a *pro se* complaint in the Court of Common Pleas of Forest County.  ECF No. 1.  Defendants filed a timely Notice of Removal on June 12, 2024.  *Id.*  After seeking leave to amend, Talbert filed his Second Amended Complaint – the currently operative pleading – on July 8, 2025.  ECF No. 70.  He asserts federal claims pursuant to the Americans with Disabilities Act, the Rehabilitation Act, and the Eighth Amendment, as well as state law claims of assault and battery and civil conspiracy to commit libel.  *Id.*  As

---

[1] Plaintiff served his maximum sentence and was released from DOC custody on November 12, 2025.

1

Defendants, Talbert has identified the DOC, DOC Secretary Laurel Harry, and corrections officers Lowe, Lesko, Crose, Young, and Keppel. *Id.*

Talbert and Defendants have filed both cross-motions for judgment on the pleadings and cross-motions for summary judgment.[2] *See* ECF Nos. 77, 83, 91, 103. Each motion is ripe for adjudication.

II.    Factual Background

According to Talbert, on May 29, 2024, Defendant Crose, "without justification, and in reckless disregard of Plaintiff being a known asthmatic, … maliciously and sadistically deployed the DOC's strongest OC spray, named Phantom, into Plaintiff's RHU cell, in grossly large amounts." ECF No. 70 ¶ 23. As a result, Talbert experienced breathing difficulties and a burning sensation in his lungs "for a substantial period of time." *Id.* ¶ 25. To cover up his malicious use of spray, Crose conspired with Lowe, Lesko, Young, and Keppel to "knowingly file a false misconduct report" alleging that Talbert had refused to obey an order and made threatening comments to Crose. *Id.* ¶ 29.

Talbert filed two administrative grievances after the incident. In Grievance # 1091293, Talbert accused Crose of "maliciously and sadistically spray[ing] OC into [his] cell, in large amounts, causing [his] breathing to be labored." ECF No. 105-4. That grievance was denied on initial review, *see id.* at p. 6, and Talbert did not appeal. *See* ECF No. 105-7 ¶ 16.

Talbert's second grievance related to the same incident, Grievance # 1091297,

---

[2] Because the parties have each submitted cross-motions for summary judgment on a more fully developed record, their respective motions for judgment on the pleadings will be denied as moot.

alleged that unnamed medical staff failed to provide adequate treatment following Crose's use of OC spray. ECF No. 105-5. Although Talbert appealed the denial of that grievance to final review, he has not sued any of those medical providers in this action. *See* ECF No. 70.

III.    Standard of Review

Federal Rule of Civil Procedure 56(a) requires the court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this standard "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether a genuine issue of material fact remains for trial, the court must view the record and all reasonable inferences to be drawn therefrom in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse*

*Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. Instead, once the movant satisfies its burden of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party must go beyond his pleadings with affidavits, depositions, answers to interrogatories or other record evidence to demonstrate specific material facts that give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Further, under Rule 56, a defendant may seek summary judgment by pointing to the absence of a genuine fact issue on one or more essential claim elements. The Rule mandates summary judgment if the plaintiff then fails to make a sufficient showing on each of those elements. When Rule 56 shifts the burden of production to the nonmoving party, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. *See Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

Finally, because Plaintiff is proceeding pro se, the court must "apply the applicable law, irrespective of whether [the] pro se litigant has mentioned it by name." *Holley v. Dep't of Veteran's Affairs,* 165 F.3d 244, 247-48 (3d Cir. 1999). Nevertheless, "a pro se plaintiff is not relieved of his obligation under [Federal Rule of Civil Procedure] 56 to point to competent evidence in the record that is capable of refuting a defendant's motion for summary judgment." *Dawson v. Cook,* 238 F. Supp. 3d 712,717 (E.D. Pa. 2017) (citation omitted). In other words, a plaintiff's pro se status does not relieve him of his "obligation under Rule 56(c) to produce evidence

4

that raises a genuine issue of material fact." *Id.* (quoting *Boykins v. Lucent Techs., Inc.,* 78 F. Supp. 2d 402, 408 (E.D. Pa. 2000)); *see also Winfield v. Mazurkiewicz,* 2012 WL 4343176, *1 (W.D. Pa. Sept. 21, 2012).

IV.    Analysis

1. Excessive force

Talbert maintains that Crose's deployment of OC spray in a malicious and sadistic manner amounted to excessive force in violation of the Eighth Amendment. Defendants seek summary judgment based, among other things, on Talbert's failure to properly exhaust his administrative remedies before initiating this lawsuit. Because exhaustion is a "prerequisite to an inmate bringing suit," it is a "threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time." *Rinaldi v. United States*, 904 F.3d 257, 265 (3d Cir. 2018) (quoting source omitted).

In broad brush, the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a) (the "PLRA"), requires a prisoner to exhaust any available administrative remedies before he may bring an action pursuant to 42 U.S.C. § 1983 challenging the conditions of his confinement. 42 U.S.C. § 1997e(a). This exhaustion requirement applies to all claims relating to prison life that do not implicate the duration of the prisoner's sentence. *Porter v. Nussle,* 534 U.S. 516, 532 (2002). Failure to exhaust administrative remedies under the PLRA is an affirmative defense that defendants must plead and prove. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

The grievance system utilized in Pennsylvania's prison system requires inmates to satisfy a three-step grievance and appeals process. First, "within 15 working days after the event upon which the claim is based," the prisoner must submit a written grievance for review by the Facility Grievance Coordinator ("FGC") using the appropriate form. DC-ADM 804, § 1.A.8. *See also Lewis v. Sutherland*, 2024 WL 6957719, at *5 (W.D. Pa. Oct. 18, 2024). The FGC must provide an initial review response to the grievance to the inmate "within 15 working days from the date the grievance was entered into the Automated Inmate Grievance Tracking System." DC-ADM 804 at § 1.C.5.g. Second, "if the FGC has rejected the grievance or the inmate is otherwise dissatisfied with the initial review response," the inmate may appeal to the prison's Facility Manager "within 15 working days from the date" the inmate receives "the initial review response/rejection." *Lewis*, 2024 WL 6957719, at *5; DC-ADM 804 at § 2.A.1.a, b. The Facility Manager must then notify the inmate in writing "of his/her decision within 15 working days of receiving the appeal." *Id*. at § 2.A.2.d. Finally, "[a]ny inmate who is dissatisfied with the disposition of an appeal from the [Facility Manager]" may appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") "within 15 working days from the date of the [Facility Manager's] decision." *Id*. at § 2.B.1.b. Once these three steps have been satisfied, a grievance has ordinarily been administratively exhausted for purposes of the PLRA.

In support of their PLRA exhaustion affirmative defense, Defendants have submitted Talbert's complete grievance history and a declaration from Michael Bell,

a SOIGA records custodian. *See* ECF No. 105-3; 105-7. Bell explains that, as a SOIGA officer, he has access to all inmate records regarding grievances. ECF No. 105-7 ¶ 12. He explains that he has reviewed the pertinent DOC records for inmate Talbert and, based on that review, attests that Talbert never appealed Grievance # 1091293 to SOIGA for final review. *See id.* ¶¶ 15-16. Bell further attests that the only other grievance filed by Talbert in relation to the OC spray incident alleged medical abuse on the part of unnamed medical staff, none of whom are defendants in this action. *Id.* ¶ 17.

Based on these submissions, Defendants have met their threshold burden of demonstrating through record evidence that Talbert did not administratively exhaust his excessive force claim against Crose. Talbert has offered no evidence to support a contrary finding. Therefore, no genuine dispute exists regarding Talbert's failure to exhaust his administrative remedies as to his excessive force claim against Crose.

Talbert does not dispute this failure. Instead, he claims in his summary judgment response that he "did not receive or otherwise have the ability to respond [to the denial of Grievance # 1091293] due to him being transferred to SCI Fayette and not receiving the initial grievance response." ECF No. 110 at p. 3. The United States Supreme Court has identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Ross v. Blake*, 578 U.S. 632, 643 (2016). First, an administrative procedure is not available "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to

provide any relief to aggrieved inmates." *Id.* Second, a procedure is not available when it is "so opaque that it becomes, practically speaking, incapable of use." *Id.* at 643-44. Finally, a procedure is unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misinterpretation, or intimidation." *Id.* at 644.

To the extent that Talbert is challenging the availability of the administrative process, he has provided no factual record to support his claim that the DOC failed to provide him with the initial review denial. "Once the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him." *Kendrick v. CO Hann*, 2021 WL 2914986, at *5 (M.D. Pa. July 12, 2021) (citing *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018)). Talbert's unsupported statement in a legal brief that he never received that document is insufficient to create a genuine issue of material fact on an issue concerning which he bears the ultimate burden of proof.[3] *See Childers v. Joseph*, 842 F.2d 689, 694-95 (3d Cir. 1988) ("If the moving party has satisfied its initial burden, the nonmoving party must, in their opposition to the motion, identify evidence of record that creates a genuine issue of material fact."); *Player v. Motiva Enterprises, LLC*, 240 Fed. Appx. 513, 522 n. 4 (3d Cir. 2007) ("Where the party opposing a motion for summary judgment bears the ultimate burden of proof, the moving party may discharge its initial burden of showing that there is no genuine

---

[3] While Talbert also denies receiving that document in his Responsive Concise Statement, he does not cite any evidence to support that denial. The only exhibit that he submitted in connection with his summary judgment response is a declaration that does not address exhaustion. *See* ECF No. 111.

8

issue of material fact 'by showing – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'") (quoting *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004)). *See also Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109–10 (3d Cir. 1985) (noting that arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion"). As such, Defendants are entitled to summary judgment on this claim.

### 2. ADA/RA

Talbert next claims that the DOC is violating the ADA and RA by "permitting reckless staff violence with OC spray in nearly all correctional institutions under its jurisdiction" and "failing to make reasonable accommodations for disabled inmates with asthma." ECF No. 70 ¶ 33. The crux of Talbert's argument appears to be that the DOC failed to reasonably accommodate his asthmatic condition by exempting him from the use of OC spray.

Title II of the ADA provides that "no qualified individual with a disability shall, by reasons of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the RA similarly provides that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

"Because the same standards govern both the [Rehabilitation Act] and ADA claims," both claims may be addressed "in the same breath." *Chambers ex rel. Chambers v. School Dist. of Phila. Board of Educ.*, 587 F.3d 176, 189 (3d Cir. 2009) (citing *McDonald v. Pennsylvania*, 62 F.3d 92, 95 (3d Cir. 1995) ("Whether suit is filed under the Rehabilitation Act or under the Disabilities Act, the substantive standards for determining liability are the same." (citation omitted)).[4] To establish a violation of either statute, a plaintiff must demonstrate: (1) that he is a qualified individual; (2) with a disability; and (3) that he was denied the opportunity to participate in or benefit from the services, programs, or activities of a public entity, or was otherwise subject to discrimination by that entity, by reason of his disability. *Bowers v. National Collegiate Athletic Association*, 475 F.3d 524, 553 c. 32 (3d Cir. 2007).

Assuming Talbert's alleged asthma constitutes a disability within the meaning of the ADA and RA, he has failed to allege facts or provide evidentiary support for the proposition that the DOC excluded him from or discriminated against him in connection with any service, program, or activity because of his disability. This Court recently rejected a nearly identical claim on a similar record in *Barksdale v. Department of Corrections*, 2024 WL 5238210 (W.D. Pa. Dec. 27, 2024). In *Barksdale*, as here, the plaintiff brought an ADA claim against the DOC based on a staff member's use of OC spray on two occasions despite knowing that he suffered from asthma, hypertension, and mental health issues. *Id.* at *1. As in the instant case,

---

[4] While causation standards are slightly different under the ADA and RA – under the RA, "the disability must be the sole cause of the discriminatory action, while the ADA only requires but-for causation" – the allegations in this case are sufficient to establish causation under both standards. *See Furgess v. Penn. Dep't of Corr.*, 933 F.3d 285, 291 n. 25 (3d Cir. 2019).

the plaintiff challenged the use of OC spray without identifying any "service, program, or activity offered by the DOC and for which he was qualified and from which he was excluded." *Id.* at *5. The Court held that this failure was fatal to his ADA claim:

> Assuming for purposes of Defendants' motion that Barksdale's alleged asthma and other medical conditions rendered Barksdale disabled, his ADA claim nevertheless fails because he has not alleged facts to support that the DOC excluded him from or discriminated against him in any service, program, or activity because of his disability. Indeed, Barksdale has not identified any service, program, or activity offered by the DOC and for which he was qualified and from which he was excluded. The absence of factual allegations to support this fundamental element precludes a viable Title II claim. *See Geness v. Admin. Off. of Pennsylvania Cts.*, 974 F.3d 263, 275 (3d Cir. 2020) (holding that the service, program, or activity element is "at the foundation of ... [a] Title II claim ... [as] a necessary first step to determining whether his claim is cognizable").

*Id.*

The same conclusion is required here. Neither Talbert's pleading nor his summary judgment response includes any facts suggesting that he was deprived of access to a service, program, or activity because of his ability. Rather, he simply argues that the DOC "failed to reasonably accommodate [him] by subjecting him to OC spray." ECF No. 70 ¶ 33. This conclusory averment does not cure the deficiencies outlined above and, as such, cannot salvage his claim.

### 3. Supervisory liability

Talbert's final federal ground for relief, titled "supervisory liability," accuses DOC Secretary Harry of generally "permitting reckless staff violence with OC spray and failing to reasonably accommodate disabled inmates with asthma." ECF No. 70

¶ 44. Talbert maintains that Harry's failure to curtail the use of OC spray led to him being "maliciously and sadistically OC sprayed without any justification." *Id.*

Talbert has failed to allege the degree of personal involvement necessary to hold Harry liable for any injuries stemming from the May 29, 2024 incident. To prevail on a § 1983 claim, a plaintiff "must show that each and every defendant was 'personal[ly] involve[d]' in depriving him of his rights." *Kirk v. Roan*, 2006 WL 2645154, at *3 (M.D. Pa. 2006) (quoting *Evancho v. Fischer*, 423 F.3d 347, 353 (3d Cir. 2006)). This means that each defendant must have played an "affirmative part" in the complained-of misconduct. *Iqbal*, 556 U.S. at 677 ("In a § 1983 suit ... [a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); *Oliver v. Beard*, 358 Fed. Appx. 297, 300 (3d Cir. 2009). In the absence of specific allegations that a defendant played a role in depriving the plaintiff of a constitutional right, dismissal is appropriate. *See, e.g.,* *Mearin v. Swartz*, 951 F.Supp.2d 776, 781-82 (W.D. Pa. 2013) (dismissing claims pursuant to Rule 12(b)(6) because the plaintiffs had failed to set forth sufficient facts to establish that certain defendants had played an affirmative part in the alleged Eighth Amendment violation).

These principles apply with equal force where the defendants are supervising prison officials. *See, e.g., Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998) (noting that liability for supervisory officials must still be based on "personal involvement in the alleged wrongs"); *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) ("[L]iability cannot be predicated solely on the operation of respondeat

superior."). Although a supervisor cannot encourage constitutional violations, "a supervising public official has [no] affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates." *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986); *Brown v. Grabowski*, 922 F.2d 1097, 1120 (3d Cir. 1990). Rather, a supervisor-defendant may only be liable for unconstitutional acts undertaken by subordinates if the supervisor either: (1) with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm; or (2) participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct. *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).

In the instant case, Talbert alleges only that Harry permitted DOC staff to "recklessly" use OC spray on asthmatic inmates "without any legal justification." This conclusory averment is unsupported by any evidence in the record suggesting that Harry played any role in the use of OC spray against Talbert or any injury that might have ensued. Because Talbert's § 1983 claim against Harry is based entirely upon her supervisory role DOC, it is no more than an assertion of respondeat superior. As such, it is insufficient under § 1983 to establish personal involvement in the deprivation of a constitutional right. *See, e.g., Rode*, 845 F.2d at 1207. Harry is entitled to summary judgment.

4. State law claims

Talbert also asserts state law claims for assault and battery and conspiracy to commit libel. Having dismissed all claims over which the Court has original jurisdiction, the Court will decline to exercise supplemental jurisdiction over those claims. "Federal courts are of limited jurisdiction, and may only decide cases consistent with the authority afforded by the Constitution or statutes of the United States." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 378 (1994). Thus, "[w]hen the claims over which a district court has original jurisdiction are resolved before trial, the district court <u>must</u> decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Neelu Pal v. Jersey City Med. Ctr.*, 658 Fed. Appx. 68, 74 n. 6 (3d Cir. 2016) (emphasis in original) (internal quotation marks and citations omitted); *see also Yue Yu v. McGrath*, 597 Fed. Appx, 62, 68 (3d Cir. 2014) (affirming the district court's decision to dismiss "all of the remaining state and common law claims after awarding summary judgment to [d]efendants on all of the federal claims over which it had original jurisdiction"). "Importantly, pendent jurisdiction is a doctrine of discretion, not a plaintiff's right." *Yue Yu*, 597 Fed. Appx. at 68.

As each of Plaintiff's remaining claims are entirely grounded in state law, the Court will decline to exercise supplemental jurisdiction over those claims. *Id.* at 68; *see also* 28 U.S.C. § 1367(c)(3) (permitting a district court to decline to exercise supplemental jurisdiction where it has "dismissed all claims over which it has

original jurisdiction"). Consequently, Plaintiff's assault and battery and conspiracy to commit libel claims will be remanded to the Forest County Court of Common Pleas for further proceedings.

V.    Conclusion

Consistent with the foregoing, the Court concludes that Defendants are entitled to summary judgment on the ADA, RA, Eighth Amendment, and supervisory liability claims set forth in Counts 1, 2, 3, and 6 of the Second Amended Complaint. As to each of those claims, Defendants' motion for summary judgment will be granted and Talbert's motion for summary judgment will be denied.

Having resolved all claims over which the Court has original jurisdiction, the Court declines to exercise supplemental jurisdiction over the state law claims set forth at Counts 5 and 6. Those claims will be remanded to the Forest County Court of Common Pleas for further proceedings pursuant to 28 U.S.C. § 1367(c)(3).

Finally, the parties' cross-motions for judgment on the pleadings will be denied as moot.

An appropriate order will follow.

DATED this 23rd day of March, 2026.

SUBMITTED BY:

RICHARD A. LANZILLO
Chief United States Magistrate Judge

15